SUSAN S. MUCK (CSB No. 126930)
smuck@fenwick.com
MICHAEL DICKE (CSB No. 158187)
mdicke@fenwick.com
DIANA CHANG (CSB No. 287624)
dchang@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

FELIX S. LEE (CSB No. 197084)
flee@fenwick.com
MICHAEL DAVIS-WILSON (CSB No. 259790)
mdaviswilson@fenwick.com
AVERY L. BROWN (CSB No. 313478)
avery.brown@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:     650.988.8500
Facsimile:     650.938.5200

Attorneys for Defendants
Nimble Storage, Inc., Suresh Vasudevan,
Anup V. Singh, Daniel Leary, and Varun Mehta

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NIMBLE STORAGE, INC. SECURITIES LITIGATION | Case No.: 4:15-cv-05803-YGR<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:     April 18, 2017<br>Time:     2:00 p.m.<br>Judge:   Hon. Yvonne Gonzalez Rogers<br><br>Date Action Filed:  December 17, 2015 |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     PLAINTIFF IS STILL UNABLE TO SATISFY ITS BURDEN TO PLEAD
        WITH PARTICULARITY ANY STATEMENTS WERE FALSE
        AND MISLEADING ............................................................................................ 2

        A.      Plaintiff's Claims Regarding the Commercial Business Are Not Actionable. ....... 2

        B.      Nimble's Statements Regarding Its Plans to Move Toward Non-GAAP
                Operating Income Break-even Are Not Actionable ............................................... 3

        C.      Nimble's Statements Regarding the Enterprise Business Are Not Actionable ....... 5

                1.      The Alleged Reclassification of Commercial to Enterprise Customers
                        Still Do Not State a Claim For Securities Fraud ........................................ 5

                2.      No Particularized Facts Are Pled Demonstrating the Falsity
                        of Statements Regarding the Enterprise Business ...................................... 7

                3.      Generic Statements by CWs About "Difficulties" in the Enterprise
                        Business and Its Product Features Do Not Support
                        a Claim of Falsity ...................................................................................... 7

III.    NIMBLE'S FORWARD-LOOKING STATEMENTS ARE PROTECTED
        BY THE REFORM ACT SAFE HARBOR .......................................................... 8

        A.      The Forward-Looking Statements Are Not Actionable For Failure to Plead
                Actual Knowledge With Particularity .................................................................... 8

        B.      The Cautionary Language Accompanying the Forward-Looking Statements was
                Meaningful .............................................................................................................. 9

IV.     THE COMPLAINT DOES NOT PLEAD PARTICULARIZED FACTS SUFFICIENT
        TO RAISE A STRONG INFERENCE OF SCIENTER ...................................... 9

        A.      The Confidential Witness Allegations Fail to Establish Scienter ......................... 9

                1.      The Confidential Witnesses Lack Required Personal
                        Knowledge ................................................................................................ 10

                2.      No Particularized Facts Showing Contemporaneous, Contradicting
                        Knowledge Supporting Strong Inference of Scienter ............................... 10

                3.      No Strong Inference of Scienter for Any Reclassifications ..................... 12

                4.      No Basis to Establish Reliability of CW9 ................................................ 13

        B.      No Inference of Scienter from Core Operations Theory .......................................... 14

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF CONTENTS
(CONTINUED)**

**Page**

C.      No Response to Defendant's Trades that Rebut Inference of Scienter ................ 14

V.     THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE
       TO AMEND ......................................................................................................... 15

VI.    CONCLUSION ...................................................................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Peregrine Pharms., Inc.*,
   2013 WL 4780059 (C.D. Cal., Aug. 23, 2013)....................................................................11

*Brodsky v. Yahoo! Inc.*,
   630 F. Supp. 2d 1104 (N.D. Cal. 2009) ...........................................................................10

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002).............................................................................................5

*Cement Masons & Plasterers Joint Pension Trust v. Equinix, Inc.*,
   2012 WL 6044787 (N.D. Cal. Dec. 5, 2012)....................................................................12

*Fosbre v. Las Vegas Sands Corp.*,
   2012 WL 2848057 (D. Nev. July 11, 2012).......................................................................4

*In re Autodesk, Inc. Sec. Litig.*,
   132 F. Supp. 2d 833 (N.D. Cal. 2000) .......................................................................11, 12

*In re Bare Escentuals, Inc. Sec. Litig.*,
   745 F. Supp. 2d 1052 (N.D. Cal. 2010) ............................................................................9

*In re ChinaCast Educ. Corp. Sec. Litig.*,
   809 F.3d 471 (9th Cir. 2015).............................................................................................10

*In re Copper Mountain Sec. Litig.*,
   311 F. Supp. 2d 857 (N.D. Cal. 2004) ..............................................................................5

*In re Hypercom Corp. Sec. Litig.*,
   2006 WL 726791 (D. Ariz., Jan. 25, 2006) .....................................................................13

*In re Immune Response Sec. Litig.*,
   375 F. Supp. 2d 983 (S.D. Cal. 2005)................................................................................9

*In re Int'l Rectifier Corp. Sec. Litig.*,
   2008 WL 4555794 (C.D. Cal., May 23, 2008) .................................................................12

*In re Invensense, Inc. Sec. Litig.*,
   2016 WL 1182063 (N.D. Cal. Mar. 28, 2016)..................................................................15

*In re JDS Uniphase Corp. Sec. Litig.*,
   2003 WL 26615705 (N.D. Cal. Nov. 3, 2003)...............................................................2, 3

*In re Metawave Commc'ns Corp. Sec. Litig.*,
   298 F. Supp. 2d 1056 (W.D. Wash. 2003).........................................................................6

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*,
  184 F. Supp. 2d 991 (N.D. Cal. 2001) ...................................................................13

4

5

*In re NVIDIA Corp. Sec. Litig.*,
  2010 WL 4117561 (N.D. Cal. Oct. 19, 2010)..........................................................15

6

7

*In re Secure Computing Corp. Sec. Litig.*,
  120 F. Supp. 2d 810 (N.D. Cal. 2000) .......................................................................4

8

*In re Siebel Sys., Inc. Sec. Litig.*,
  2005 WL 3555718 (N.D. Cal. Dec. 28, 2005) ...........................................................3

9

10

*In re VeriFone Sec. Litig.*,
  784 F. Supp. 1471 (N.D. Cal. 1992) ......................................................................4, 7

11

*In re Violin Memory Sec. Litig.*,
  2014 WL 5525946 (N.D. Cal. 2014)..........................................................................9

12

13

*In re Zumiez Inc. Sec. Litig.*,
  2009 WL 901934 (W.D. Wash. Mar. 30, 2009) ....................................................3, 13

14

*Institutional Investors Group v. Avaya, Inc.*,
  564 F.3d 242 (3rd Cir. 2009) .....................................................................................4

15

16

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008)....................................................................................6

17

18

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004)..................................................................................11

19

*Oklahoma Firefighters Pension & Ret. Sys. v. Ixia*,
  2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) .........................................................14

20

21

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  2012 WL 1868874 (N.D. Cal. May 22, 2012) .........................................................10

22

23

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014)....................................................................................14

24

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001).....................................................................................8

25

26

*South Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008)....................................................................................14

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*South Ferry LP No. 2 v. Killinger*,
    687 F. Supp. 2d 1248 (W.D. Wash. 2009)................................................................13

4

5

*Wenger v. Lumisys, Inc.*,
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) ........................................................................8

6

*Wozniak v. Align Tech., Inc.*,
    850 F. Supp. 2d 1029 (N.D. Cal. 2012) ....................................................................8

7

8

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009).................................................................................5, 6

9

**STATUTES**

10

15 U.S.C. § 78u-4(b)(1)(B) ...............................................................................................7

11

15 U.S.C. § 78u-5(c)(1)(A)(i) ...........................................................................................4

12

15 U.S.C. § 78u-5(c)(1)(B)(i) .......................................................................................8, 9

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## I.    INTRODUCTION

Having spent more than a year investigating claims that Nimble Storage, Inc. ("Nimble" or the "Company") and various of its officers committed securities fraud, Plaintiff has nothing substantive to show for its efforts. Having had its allegations dismissed for failure to state a claim, Plaintiff fails to present additional particularized facts to cure the pleading defects identified by this Court, and its new theories of liability are both factually inadequate and inconsistent with Plaintiff's other theories of the case.

To begin with, Plaintiff cannot escape the illogic of its claim that Nimble suffered weakness in both commercial and enterprise throughout the class period, while simultaneously posting record results.  Plaintiff's speculation that it took time for weakness in the commercial sector to emerge cannot be reconciled with Plaintiff's own pleading, which admits commercial sales cycles lasted only a quarter, and thus any weakness would have been felt immediately.

Equally fruitless is Plaintiff's theory that Nimble misled the market regarding its prediction that it would achieve break-even by the end of fiscal year 2016.  Such predictions are inherently forward-looking, and thus protected by the Reform Act safe harbor.  Moreover, even if they were construed as descriptions of the Company's current status, they are inactionable given there is no dispute that Nimble's metrics tracking progress to break-even were accurate.

Plaintiff also fails to plead facts sufficient to salvage its claims regarding Nimble's enterprise business.  Most notably, Plaintiff still does not dispute that Nimble added over 140 new enterprise customers over the course of the Class Period – ***an increase of over 53%***, which confirms the generically positive statements the Company made about that line of business. Plaintiff's reliance on alleged reclassification of commercial customers as enterprise is also misguided, given that it ignores that such reclassifications must be incorporated into the Company's disclosed results to constitute fraud, and Plaintiff all but concedes that it cannot plead particularized facts which show this.

Plaintiff fares no better with its arguments regarding scienter.  Even with the addition of multiple Confidential Witnesses ("CWs"), Plaintiff still cannot provide any well-pled facts showing any Defendant did not believe the truth of the statements made to the market.  Most of

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   Plaintiff's CWs cannot establish a strong inference of scienter given lack of direct interaction

2   with Defendants, and those that did have such interactions only impute knowledge of inactionable

3   facts, such as the publicly available fact that Nimble's products did not have certain features.

4      With regard to Plaintiff's insider trading allegations, the Opposition does not deny that

5   Defendants retained the overwhelming majority of their shares during the Class Period, a fact

6   which as a matter of law negates an inference of scienter.  Plaintiff also cannot cure the fatal

7   flaws in the trading model it used to analyze Defendants' trades, *i.e.*, that no court has ever used

8   such a model to determine scienter, and it is not described with the required factual particularity.

9      Plaintiff has been afforded multiple opportunities to plead a viable claim, and it is

10   abundantly apparent it cannot do so.  The SAC should therefore be dismissed with prejudice.

11   **II.   PLAINTIFF IS STILL UNABLE TO SATISFY ITS BURDEN TO PLEAD WITH**

12   **PARTICULARITY ANY STATEMENTS WERE FALSE AND MISLEADING**

13      **A.   Plaintiff's Claims Regarding the Commercial Business Are Not Actionable.**

   Plaintiff's allegations regarding alleged weakness in Nimble's commercial business fail at

14   the most fundamental level, and the Opposition fails to acknowledge, much less address, key

15   logical and factual defects in Plaintiff's theory.  Opp. at 12-14.

16      Most notably, Plaintiff's attempt to manufacture an explanation for how Nimble could

17   post record results for nearly a year while ***both*** the enterprise and commercial businesses

18   (effectively the entire Company) were supposedly suffering "weakness" falls flat.  Opp. at 12-14.

19   Plaintiff posits that the alleged weakness was merely a "slowing-down (rather than a complete

20   halt) of the Company's momentum in its commercial segment," (Opp. at 13-14) but this theory

21   suffers from two fatal flaws.  ***First***, throughout the class period Nimble reported ***record results***

22   which exceeded the ***top end*** of its guidance, and Plaintiff does not dispute the veracity of those

23   results.  SAC ¶ 119.  Plaintiff does not explain how Nimble could beat expectations in record

24   fashion while experiencing a "slowdown" in its largest business segment, nor does it distinguish

25   authorities that dismissed similarly contradictory claims.  *In re JDS Uniphase Corp. Sec. Litig.*,

26   2003 WL 26615705, at *4 (N.D. Cal. Nov. 3, 2003) (dismissing "illogical" claim that company

27   was experiencing weak demand while reporting uncontroverted revenue growth).  ***Second***,

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Plaintiff never confronts the fact that commercial sales cycles last only one quarter (SAC ¶¶ 52,

2    177), and therefore any alleged "weakness" would have manifested *immediately*, long before the

3    end of the year-long class period.  SAC ¶ 119; *JDS Uniphase*, 2003 WL 26615705, at \*4.

4          Even if the illogic of Plaintiff's theory was ignored, it still has not pled particularized facts

5    sufficient to state a claim regarding Nimble's commercial business.  Plaintiff relies entirely upon

6    CW statements to support this theory, to no avail.  Specifically, the Opposition never engages

7    with the fact that CW5 only has knowledge about *two and half states* in the mid-Atlantic region

8    (SAC at 2), and thus cannot be relied upon to impute weakness to Nimble's nationwide

9    commercial business.  *See In re Zumiez Inc. Sec. Litig.*, 2009 WL 901934, at \*8 (W.D. Wash.

10   Mar. 30, 2009) (finding CW statements unreliable in the absence of facts to "suggest that the

11   witnesses were positioned to accurately assess the Company's performance on such a broad

12   scale.").  Similarly unavailing is Plaintiff's reliance on CW1 and CW2, as neither of them claims

13   that Nimble was suffering weakness in the commercial business during the class period – they

14   merely note that sales and marketing resources were being shifted from commercial to enterprise,

15   a theory that this Court already rejected as supporting falsity.  Order at 11-12; SAC ¶¶ 190-191.[1]

16         Finally, Plaintiff's throwaway assertion that Mr. Vasudevan admitted "both [the

17   commercial and enterprise] segments were experiencing weakness" distorts what he actually said.

18   Opp. at 3.  Mr. Vasudevan was describing "what we saw happening *during Q3*," *i.e.*, at the *end* of

19   the class period (SAC ¶ 212), and thus this cannot be construed as an "admission" that Nimble

20   was experiencing commercial weakness "throughout the Class Period."  Opp. at 13.

**B.     Nimble's Statements Regarding Its Plans to Move Toward Non-GAAP Operating Income Break-even Are Not Actionable**

21

22         Plaintiffs' other new theory – that Nimble misled the market by predicting it was "on

23   track" to break-even by the end of FY2016 – is also unavailing. Opp. at 14. Plaintiff has no

24

---

25   [1]  Plaintiff also inexplicably cites to CW3, who said *nothing* regarding weakness in commercial. Opp. at 13, n.17; SAC ¶¶ 129, 154, 180-82, 188. CW9 also cannot be relied upon given Plaintiff's

26   failure to provide required details about his background (*see* Section IV.A.4, *infra*), and in any event the Opposition ignores that CW9 provides *no facts* to support the allegation that the

27   commercial pipeline was weak.  SAC ¶ 192; *In re Siebel Sys., Inc. Sec. Litig.*, 2005 WL 3555718, at \*8-9 (N.D. Cal. Dec. 28, 2005) (CW allegations "'must be accompanied by enough

28   particularized detail to support a reasonable conviction in the informant's basis of knowledge.'").

1   convincing response to the fact that this prediction was a statement about the ***future*** and therefore

2   a protected forward-looking statement under the Reform Act safe harbor.  *Institutional Investors*

3   *Group v. Avaya, Inc.*, 564 F.3d 242, 256 (3rd Cir. 2009) (statement that Company is "on track" is

4   a "reaffirmation of [its] projections" and therefore a protected forward-looking statement).[2]

5      Even if the safe harbor did not apply, Plaintiff still fails to state a claim given lack of well-

6   pled facts showing Nimble's statements were inaccurate. Nimble (and Plaintiff) used non-GAAP

7   operating income as the metric to measure progress towards break-even (SAC ¶ 5; Opp. at 14),

8   and Plaintiff does not question the accuracy of those numbers or the fact that they showed steady

9   chronological progression towards break-even.  *Id.*; Mot. at 10.  This is sufficient to bar any claim

10  Nimble was misleading the market.  *In re VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1481 (N.D.

11  Cal. 1992) (when a company provides "hard information" to investors, such information "when

12  accurately reported, is rarely subject to misinterpretation, even if the disclosure is accompanied

13  by generally optimistic statements about the future by corporate officers.").

14     The Opposition's contention that Defendants "explicitly tied breakeven to success in both

15  the commercial and enterprise segments" (Opp. at 14) is both a misinterpretation of the SAC and

16  a *non-sequitur*.  It misinterprets the SAC given that the paragraph cited in support says nothing of

17  the sort, and the Opposition tellingly cannot quote any language that says this.  SAC ¶ 109.  The

18  argument is also a *non-sequitur* given that whatever "success" commercial and enterprise were

19  experiencing, there is no dispute they were generating quarter-by-quarter improvement in non-

20  GAAP operating income, which is the unchallenged metric for determining progress towards

21  break-even.  *VeriFone*, 784 F. Supp. at 1481.  And if one were to argue that alleged "weakness"

22  in those sectors could impact Nimble's ability to achieve break-even ***in the future***, that is a

23  forward-looking statement protected by the safe harbor.  15 U.S.C. § 78u-5(c)(1)(A)(i).[3]

24

[2] Contrary to Plaintiff's assertion, courts have not held that the phrase "on track" is necessarily a
25  statement of current business conditions.  Opp. at 15-16.  Rather, the cases cited in the Opposition
hold that "on track" ***may be***, in a particular context, used to describe current business conditions,
26  but Plaintiff provides no explanation of why in ***this context*** it is not forward-looking.  *Id.*; *Fosbre
v. Las Vegas Sands Corp.*, 2012 WL 2848057, at *11 (D. Nev. July 11, 2012); *In re Secure
27  Computing Corp. Sec. Litig.*, 120 F. Supp. 2d 810, 818 (N.D. Cal. 2000).

[3] It also bears noting that Courts have ruled statements that a Company is "on track" to be
28  inactionable "puffery."  *See* Mot. at 11, *citing In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

### C.   Nimble's Statements Regarding the Enterprise Business Are Not Actionable

#### 1.   The Alleged Reclassification of Commercial to Enterprise Customers Still Do Not State a Claim For Securities Fraud

Plaintiff fares no better in salvaging its arguments regarding alleged reclassification of commercial customers as enterprise, an argument previously rejected by this Court.  Order at 15-17.  As a threshold matter, the Opposition never acknowledges that, as pointed out by this Court, "none of the CWs were responsible for determining which clients should be reclassified as enterprise clients," and thus cannot speak reliably to whether the reclassifications were made for a fraudulent purpose.  *Id.* at 16; *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009) (CWs must be "positioned to know the information alleged" to support claim of falsity). This deficiency is sufficient by itself to render these claims inactionable.  *Id.*; Order at 16.

The reclassification argument also fails because Plaintiff fails to show how these reclassifications were disclosed to and allegedly misled the market, and in particular that they were included in Nimble's publicly disclosed numbers.  Mot. at 12-13; *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (omission of information is only actionable if it renders misleading a statement that was actually made).  Plaintiff erroneously asserts the Court rejected this argument (Opp. at 11), when in fact the Order states the ***opposite***, noting that these reclassifications could not constitute ***fraud*** unless Nimble's "***disclosed numbers*** included the fraudulent reclassifications."  Order at 16, n.15 (emphasis added).[4]  The Opposition never acknowledges this controlling language, much less attempt to reconcile it with Plaintiff's contrary claim that it need not show the reclassifications were included in the Company's "disclosed numbers."  Opp. at 16-18; *Brody*, 280 F.3d at 1006.

1148, 1168-69 (C.D. Cal. 2007) (statement that a company was "on track to deliver improved financial performance in the fall" is inactionable as "mere corporate puffery"); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 880 (N.D. Cal. 2004) (same). Plaintiff cites no authority to the contrary and makes no attempt to distinguish Defendants' authorities.

[4] In their previous motion to dismiss, Defendants focused on the fact that Nimble never disclosed the alleged reclassifications themselves, *e.g.*, the Company never told the market that Prosper Lending had been relabeled as an enterprise customer, and shareholders could not be misled by actions they never knew about.  The Court's Order noted, however, that the reclassifications could support an allegation of fraud ***if*** Nimble's "***disclosed numbers included*** the fraudulent reclassifications." Order at 16, n.15 (emphasis added).  Following the Court's guidance, Defendants now focus on whether Plaintiff has ***pled facts which show*** that the "disclosed numbers" include the allegedly reclassified companies – and as discussed Plaintiff has not.

Indeed, Plaintiff all but concedes it cannot plead particularized facts demonstrating the reclassified customers were improperly included in Nimble's disclosed numbers, as none of the CWs were involved in preparing those numbers or financial reporting in general.  Opp. at 11; *In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1068 (W.D. Wash. 2003) ("[t]he Court must be able to tell whether a confidential witness is speaking from personal knowledge, or 'merely regurgitating gossip and innuendo.'"); *Zucco*, 552 F.3d at 996 (same). Consequently, Plaintiff resorts to misdirection, asserting that Defendants are "requiring proof at the pleading stage." Opp. at 12. This argument is a red herring – it is ***Plaintiff's burden to plead particularized facts*** showing the reclassifications were included in reported results (Order at 16, n.15), and holding Plaintiff to its pleading burden is not "requiring proof." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1071-72 (9th Cir. 2008) (under Reform Act pleading standards, plaintiff bears the burden of pleading particularized facts showing falsity).

Similarly unavailing is Plaintiff's supposition that "it exceeds the bounds of common sense that Nimble would exclude these sales from its 'enterprise' results." Opp. at 12. Conclusory appeals to what Plaintiff labels common sense cannot satisfy its burden to plead particularized facts that ***show*** what Plaintiff is asking the Court to ***assume***.  *Metzler*, 540 F.3d at 1071-72. Moreover, there is nothing "commonsensical" about Plaintiff's theory, as its own CWs note the alleged reclassifications were for internal sales purposes, *i.e.*, reallocating customers among the sales force.  SAC ¶ 54.  There is no reason to believe – and more critically no well-pled facts that ***show*** – that a non-G5000 customer reassigned to an enterprise sales representative would be included in Nimble's disclosures regarding G5000 customers.  *See* Mot. at 12-13.

Finally, Plaintiff's failure to show the reclassifications were included in Nimble's disclosed numbers is further confirmed by the fact that it does not even ***allege that those disclosed numbers are false***.  Specifically, the SAC does not include the number of G5000 customers that Nimble reported to the market – 260 at the start of the class period and over 400 at the end – in its list of false and misleading statements.  SAC ¶ 188, n.15; Mot. at 13.  Plaintiff bears a strict obligation under the Reform Act to identify all allegedly false and misleading statements in its complaint, and Plaintiff does ***not*** claim that the actual number of enterprise

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  customers disclosed to the market were false and misleading.  15 U.S.C. § 78u-4(b)(1)(B) (the

2  Reform Act requires plaintiff to "specify each statement alleged to have been misleading, [and]

3  the reason or reasons why the statement is misleading.").  This fatal admission snuffs out any

4  argument that the allegedly incorrect reclassifications were included in Nimble's "disclosed

5  numbers," and with it any claim that they constituted *fraud*.[5]  Order at 16, n.15.

### 2.  No Particularized Facts Are Pled Demonstrating the Falsity of Statements Regarding the Enterprise Business

7  Plaintiff continues to assail as misleading generic statements of optimism about Nimble's

8  enterprise business – such as "we are growing our base in large enterprises" – but such allegations

9  fall flat in the face of undisputed facts.  SAC ¶¶ 156, 216.  The critical metrics substantiating

10  Nimble's growth in enterprise remain uncontested – over the course of the Class Period Nimble

11  grew its enterprise customers from 260 to over 400, a *53% increase*.  *See* Mot. at 14.  Plaintiff

12  does not assert these numbers are inaccurate, undermining any claim that Nimble's statements

13  that the enterprise customer base was growing and similarly positive statements were misleading.

14  Moreover, even if one assumed that a 53% increase in enterprise customers was not positive

15  growth, the fact that Nimble disclosed those numbers meant that *investors could draw that*

16  *conclusion for themselves*, and therefore could not be misled.  *VeriFone*, 784 F. Supp. at 1481

17  (when "hard information" is provided to investors, such information "is rarely subject to

18  misinterpretation, even if the disclosure is accompanied by generally optimistic statements").[6]

### 3.  Generic Statements by CWs About "Difficulties" in the Enterprise Business and Its Product Features Do Not Support a Claim of Falsity

21  Unable to contest the veracity of Nimble's enterprise metrics, Plaintiff attempts to muddy

22  the waters by reciting various derogatory statements made by CWs about Nimble's enterprise

23  business and its products.  Opp. at 6-8.  Virtually none of these allegations, however, are new –

24  they are recycled allegations from the FAC previously dismissed as inadequate, and the

[5] Plaintiff makes a half-hearted attempt to argue that it did claim Nimble's G5000 numbers were false, but notably the cited paragraphs of the SAC do *not* include the actual number of G5000 customers reported to the market.  SAC ¶ 252.

[6] Nimble's optimistic statements are also inactionable on grounds they are "puffery."  Mot. at 15.  The Opposition's response to this fact rests entirely on proving its reclassification arguments (Opp. at 14), which as noted above, do not state a claim.  *See* Section II.C.1, *supra*.

Fenwick & West LLP
Attorneys at Law
Mountain View

1   Opposition identify any new facts enabling these allegations to state a claim. *Id.*  More

2   fundamentally, none of these observations regarding operational difficulties in enterprise

3   contradict the bottom line fact that Nimble was adding to its customer base in that segment. *See*

4   Mot. at 13-14; *Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1035 (N.D. Cal. 2012) (CW

5   allegations do not support a finding of falsity when "allegations attributed to the CWs '[did] not

6   contradict defendants' generalized statements'"); *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231,

7   1247 (N.D. Cal. 1998) ("All businesses from time to time suffer management problems and

8   product delays, but many manage to 'do very well' despite these commonplace business

9   wobbles.").  Consequently, these allegations fall squarely within the ambit of authorities that hold

10  that the mere presence of "[p]roblems and difficulties" in a business do not render positive

11  statements false. *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001); Mot. at 10-11.[7]

12         The same is true of Plaintiff's product allegations. Each cited deficiency is also a

13  carryover from the FAC that was ruled insufficient to state a claim. Order at 14, n.10. That the

14  SAC does not plead ***any*** new facts regarding Nimble's product features – which the Opposition

15  does not dispute – is sufficient by itself to warrant dismissal. *See* Opp. at 12, n.16; Mot. at 16.

16  Plaintiff cannot avoid the fact that "[t]he market was aware that the shortcomings in Nimble's

17  products could present a challenge to Nimble's entry into enterprise," and therefore there was no

18  obligation to "disclose the same facts." Order at 14, n.10.

19  **III.   NIMBLE'S FORWARD-LOOKING STATEMENTS ARE PROTECTED BY THE
            REFORM ACT SAFE HARBOR**
20

21         **A.     The Forward-Looking Statements Are Not Actionable For Failure to Plead
                    Actual Knowledge With Particularity**

22         The Reform Act safe harbor provides two independent bases upon which forward-looking

23  statements can be insulated from liability.  The first is that forward-looking statements are not

24  actionable unless made with ***actual knowledge*** of their falsity.  15 U.S.C. § 78u-5(c)(1)(B)(i).

25

---

26  [7] Plaintiff's attempt to limit *Ronconi* and other cases to their facts falls flat.  Opp. at 8, n.10.  The
    guiding principle in *Ronconi*, *i.e.*, that "[p]roblems and difficulties are the daily work of business
27  people. That they exist does not make a lie out of any of the alleged false statements," is fully
    applicable here, as it is not disputed that the "[p]roblems and difficulties" did not prevent Nimble
28  from growing its enterprise customer base by over 53%. *Ronconi*, 253 F.3d at 434.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   The Opposition claims the statements at issue are "not protected by the safe harbor if Plaintiff can

2   show they were made with knowledge of falsity," but provides no argument that they were, citing

3   to a section of the Opposition that has nothing to do with actual knowledge of the purported

4   falsity.  Opp. at 16.  Indeed, nowhere in the Opposition does the Plaintiff purport to show that the

5   Complaint pleads that Defendants had ***actual knowledge of falsity*** – a higher standard than mere

6   scienter – which is sufficient by itself to render the forward-looking statements in the SAC

7   inactionable.  15 U.S.C. § 78u-5(c)(1)(B)(i); Mot. at 18 (citing authorities).[8]

8       **B.**    **The Cautionary Language Accompanying the Forward-Looking Statements**
                 **was Meaningful**

9         Plaintiff also makes the perfunctory claim that the cautionary language included in

10  Defendants' public statements was not meaningful because the risks warned of had already come

11  to pass.  Opp. at 16-17.  Tellingly, the Opposition does not specify ***which*** risks had allegedly

12  come to pass.  *Id.*  Regardless, this assertion has no basis – within the first set of cautionary

13  language Nimble disclosed risk factors including "our ability to attract and retain new channel

14  partners and end-customers"; "competition from larger competitors that traditionally target larger

15  enterprises"; "limited visibility into future sales"; "failure or inability … to design products or

16  enhancements that meet end-customers' increasing demands"; and that "[f]ailure to adequately

17  expand our sales force will impede our growth." *See* Mot. at 17-18.  These risks were disclosed

18  ***before the first of the statements Plaintiff alleges are misleading***, and repeatedly thereafter,

19  which decisively rebuts Plaintiff's claim that the risk factor language was stale.  *See id.* at 17.[9]

20  **IV.**    **THE COMPLAINT DOES NOT PLEAD PARTICULARIZED FACTS**
           **SUFFICIENT TO RAISE A STRONG INFERENCE OF SCIENTER**

21

22      **A.**    **The Confidential Witness Allegations Fail to Establish Scienter**

23  [8] The Opposition reiterates its prior misreading of *In re Immune Response Sec. Litig.*, 375 F.

24  Supp. 2d 983, 1033 (S.D. Cal. 2005) with respect to mixed statements of present fact and future
prediction.  *Immune's* actual holding is that the safe harbor insulates the forward-looking portions

25  of an allegedly misleading mixed statement, but not the entire statement.  *Id.* at 1034.

26  [9] The Opposition suggests if the Court finds any non-forward-looking statements to be adequately
pled, it need not consider arguments pertaining to the safe harbor.  This Court, however, among

27  others has dismissed allegations relying on forward-looking statements while allowing other
allegations to survive.  *See, e.g., In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *14 (N.D.

28  Cal. 2014); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1080 (N.D. Cal. 2010).
Such partial dismissals helpfully narrow the scope of the issues to be litigated.

Fenwick & West LLP
Attorneys at Law
Mountain View

### 1.     The Confidential Witnesses Lack Required Personal Knowledge

Statements from CWs lacking direct contact with Defendants do not offer a reliable basis for establishing scienter. *See, e.g.*, *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *20 (N.D. Cal. May 22, 2012) (finding that statements from CWs with no direct contact with defendants "offer little, if any, reliable basis from which to infer scienter"); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1117-18 (N.D. Cal. 2009) (same).[10]  Plaintiff admits that only "[*t]hree CWs* describe direct communication with the Individual Defendants" and ***only*** with Messrs. Vasudevan or Singh. Opp. at 18 (emphasis added).  And the Opposition's description of these interactions highlights their attenuated nature – the three witnesses only describe in generic terms what ***other people*** allegedly told Messrs. Vasudevan and Singh.  *Id.*  More fundamentally, what Messrs. Vasudevan and Singh were allegedly told does not raise a strong inference of scienter – boiled down they simply learned that Nimble's products were missing various features that enterprise customers supposedly desired, which this Court has already ruled is not actionable given that product features are public.  Opp. at 18; Order at 14, n.10, *citing Howard Gunty Profit Sharing v. Quantum Corp.*, 1997 WL 514993, at *4 (N.D. Cal. Aug. 14, 1997).

Plaintiff also concedes that none of the CWs had interactions with Messrs. Mehta or Leary, much less present facts raising a strong inference of scienter, which warrants dismissal of the claims against them.[11]  Opp. at 17-23.  Similarly, Plaintiff's failure to plead particularized facts establishing scienter on the part of Individual Defendants also dooms any attempt to plead scienter as to Nimble. *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir. 2015).

### 2.     No Particularized Facts Showing Contemporaneous, Contradicting Knowledge Supporting Strong Inference of Scienter

---

[10] Plaintiff inexplicably claims Defendants "cit[e] no authority" (Opp. at 23), and then attempts to distinguish the authorities it claims were not cited.  *Id.* at 23, n.27.  These efforts are futile. Plaintiff argues *Intuitive Surgical* is inapplicable because the CW allegations in that case only created "attenuated inferences" of scienter, ignoring that this conclusion was drawn ***because*** the CWs **lacked direct interaction** with defendants. 2012 WL 1868874, at *20.  Plaintiff also claims "*Brodsky v. Yahoo! Inc.* is similarly distinguishable", and that argument fails for the same reason.

[11] CW 9 is the only witness who mentions Messrs. Mehta or Leary (SAC ¶¶ 155, 194, n.17), but CW 9 cannot be relied upon.  *See infra* Section IV.A.4.  Regardless, Messrs. Mehta and Leary are added only as a literal afterthought in a parenthetical supported by neither fact nor law. Opp. at 19 ("Vasudevan and Singh ***(and the other Defendants)*** knew that there were problems with customer reception for the enterprise product offerings.") (emphasis added).

1    In addition to the failure to allege meaningful direct interaction between the CWs and any

2    Individual Defendant, none of the CWs claim that any Individual Defendant believed Nimble's

3    statements were false or misleading when made.  Plaintiff argues the CW statements should

4    nevertheless be considered for "background information" that supports an "inference of scienter"

5    (citing *Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*), but *Washtenaw* ruled that CWs

6    without personal knowledge of the defendants' mental state could reliably speak "only for what

7    they say about the company's operations at the relevant times," and cannot be used to establish

8    knowledge of falsity by a defendant. 2012 WL 3835078, at *3 (N.D. Cal. Sept. 4, 2012).

9    Regardless, the "background information" presented by the CWs does not remotely raise a

10   strong inference of scienter, and indeed, much of it *rebuts* such inference.  Most notably, the bulk

11   of the SAC's allegations regarding scienter are spent describing internal "reports regarding

12   Nimble sales," (Cloud 9 in particular) but no CW asserts that *any of these internal reports*

13   *contradicted statements made to the market*, a fact which *rebuts* scienter.  *In re Autodesk, Inc.*

14   *Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) (mere access to internal reports without

15   facts "about the contents of the reports or about how the contents contracted defendants' public

16   statements" do not support scienter.); *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,

17   380 F.3d 1226, 1230-31 (9th Cir. 2004) (explaining that allegations are "insufficient to plead

18   scienter under the [Reform Act]" where, "although plaintiffs refer[red] to the existence of

19   [certain] data and [made] a general assertion about *what they think the data show[ed]*, they had

20   *no hard numbers* or other specific information.") (internal quotations omitted) (emphasis

21   added).[12]

22   Indeed, Plaintiff concedes that it does not know what these reports *actually said*, but

23   *assumes* they contained negative information based on "inference." Opp. at 20.[13]  Reform Act

---

[12] Plaintiff makes no attempt to distinguish this case law, and his own authority undermines his
position. Mot. at 20.  In both of Plaintiff's cases internal reports supported an inference of scienter
when plaintiffs *described their actual contents*, as opposed to here, where Plaintiff has not done
so, and is simply making an "inference" as to what they contained.  Opp. at 20, *citing In re
Immune Response*, 375. F. Supp. 2d at 1022 (internal reports support scienter where the complaint
"include[s] *the corroborating details* of the internal reports") (emphasis added); *Anderson v.
Peregrine Pharms., Inc.*, 2013 WL 4780059, at *7 (C.D. Cal., Aug. 23, 2013) (same*).*

[13] The Opposition does not even try to defend the impossible claim coming from CW10 that the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

standards do not permit such inferences – the contents of internal reports must be pled with factual specificity. *Autodesk*, 132 F. Supp. 2d at 844; *Cement Masons & Plasterers Joint Pension Trust v. Equinix, Inc.*, 2012 WL 6044787, at *8 (N.D. Cal. Dec. 5, 2012). For the same reasons, Plaintiff's assertion that "Defendants are requiring proof" of what the internal reports said (Opp. at 20, n.23) is also misguided – Plaintiff bears the burden of pleading what the reports said and how they contradicted Nimble's public statements. *Autodesk*, 132 F. Supp. 2d at 844.

### 3.    No Strong Inference of Scienter for Any Reclassifications

The only defendant Plaintiff argues had scienter with respect to alleged reclassification of commercial customers is Mr. Vasudevan (Opp. at 18), and those allegations fail at a basic level. Opp. at 18. Not a single specific fact is pled showing Mr. Vasudevan was aware of any individual customer reclassification, or that he knew how each of hundreds of customers were classified for sales purposes. No CW alleges that Mr. Vasudevan knew about the reclassifications, nor could they, given that none "were responsible for the reclassifications and therefore had no foundation on which to opine on the propriety of such actions." Order at 16; Opp. at 18.

Unable to provide facts demonstrating such knowledge, Plaintiff is forced to argue that Mr. Vasudevan must have known about the reclassifications based on his position in the Company, an argument that has been repeatedly rejected as supporting an inference of scienter under the Reform Act. *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *17 (C.D. Cal., May 23, 2008) ("By itself, the position of [the executive] is insufficient to infer a strong inference of scienter.") *citing In re Hansen Natural Corp. Sec. Litig.*, 527 F.Supp.2d 1142, 1158 (C.D.Cal. 2007) ("[T]he high rank of various Individual Defendants within [the Company] is insufficient, without more, to infer a strong inference of scienter.").[14]

Equally meritless is Plaintiff's accusation that Mr. Vasudevan was reckless in not knowing about reclassifications allegedly ordered by a direct report. Opp. at 18. Plaintiff cites no

---

Company clairvoyantly knew it would miss guidance in Q3FY16 eight months before the guidance even existed. *See* Mot. 15, n.7; ¶¶ SAC 154, 200.

[14] Plaintiff's assertion that Mr. Vasudevan is "charged with knowledge" by virtue of his position of decreased lead generation and missing Nimble product features (Opp. at 18) fails for the same reasons. *Int'l Rectifier*, 2008 WL 4555794, at *17.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   authority stating an executive must know all actions taken by a subordinate, and the authority the

2   Opposition does cite does not speak to this point. *See South Ferry LP No. 2 v. Killinger*, 687 F.

3   Supp. 2d 1248, 1260 (W.D. Wash. 2009).

4          It also bears repeating that this Court has recognized that "commercial clients can, under

5   the proper circumstances, grow into enterprise clients," and thus reclassifications are not *per se*

6   improper. Order at 16. Thus, it is not sufficient to merely show Mr. Vasudevan knew that

7   customers were being reclassified (though Plaintiff does not even do that) – what Plaintiff must

8   provide are facts showing Mr. Vasudevan specifically knew about the handful of allegedly

9   ***improper*** reclassifications to raise an inference of scienter, which the SAC does not do.

### 4.        No Basis to Establish Reliability of CW9

11         The Opposition concedes the SAC does not describe CW9's ***actual*** responsibilities, but

12  only the responsibilities of a ***generic employee who held the same title***, and without disclosure of

13  the geography CW9 covered (a critical detail given regional differences across a nationwide

14  business).  Opp. at 21-22.  Plaintiff cite no authority that a CW described in this manner can be

15  relied upon to establish scienter, and governing law states the opposite. *See In re Northpoint*

16  *Commc'ns Grp., Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 1000 (N.D. Cal. 2001) (a witness identified

17  as "Account Manager," without description of "the specific duties of *[that individual]*" could not

18  be relied upon to support an inference of scienter); *In re Hypercom Corp. Sec. Litig.*, 2006 WL

19  726791, at *5 (D. Ariz., Jan. 25, 2006) ("Allegations made by confidential witnesses cannot

20  support an inference of scienter if the plaintiff fails to plead the requisite detail regarding the job

21  description and duties of ***that*** confidential witness") (emphasis added).

22         Plaintiff's observation that other confidential witnesses corroborate CW9's allegations is

23  legally and factually devoid of merit.  Opp. at 22.  Plaintiff's reliance on *In re Dura Pharms., Inc.*

24  *Sec. Litig.* is inapposite, as it merely recognizes that "the corroborative nature of the other facts

25  alleged (including from other sources)" can be one of many elements in evaluating reliability, but

26  it does not state corroboration cures lack of required identifying details. 548 F. Supp. 2d 1126,

27  1132 (S.D. Cal. 2008).[15]  Moreover, there are multiple areas of CW9's alleged testimony that are

28  ───────────────

[15] Plaintiff ignores authorities stating that an offer to provide required details about a CW *in*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  novel and not corroborated by others (presumably this is why Plaintiff added him to the SAC),

2  and thus his reliability in those areas *cannot* be established by corroboration.

### B.  No Inference of Scienter from Core Operations Theory

4  Plaintiff's efforts to plead scienter fare no better with its invocation of the "core

5  operations" inference, which states that in some circumstances "it may also be reasonable to

6  conclude that high-ranking corporate officers have knowledge of the critical core operation of

7  their companies." *Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014).  When a plaintiff "relies

8  on allegations that management had an important role in the company but does not contain

9  ***additional detailed allegations*** about the defendants' actual exposure to information, it will

10  usually fall short of the [Reform Act] standard." *South Ferry LP, No. 2 v. Killinger*, 542 F.3d

11  776, 784 (9th Cir. 2008) (emphasis added).  Here, the Opposition does not attempt to identify

12  which facts Messrs. Vasudevan and Singh should be inferred from their positions to have known.

13  Meanwhile, it argues that Leary and Mehta should have known about Nimble's performance in

14  the enterprise and commercial segments without identifying any particular facts they should have

15  known, or why, *e.g.*, a company's VP of Engineering should be charged with intimate knowledge

16  of the sales pipeline in each market segment.  Without "detailed and specific allegations" of what

17  facts each defendant should have known from his position, the core operations inference provides

18  no additive value in establishing scienter.  *South Ferry*, 542 F.3d at 785.

### C.  No Response to Defendant's Trades that Rebut Inference of Scienter

20  The Individual Defendants' trading of Nimble shares rebuts, rather than supports, a strong

21  inference of scienter. Mot. at 23-24. Plaintiff does not dispute that Defendants collectively and

22  individually retained an overwhelming percentage of their shares during the Class Period

23  (including 95% retention by Vasudevan and 84% by Singh), which as a matter of law serves to

24  negate an inference of scienter. *Oklahoma Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL

25  1775221, at *38 (C.D. Cal. Apr. 14, 2015) (where a party "maintained more stock than [he] sold

26  during the class period," the inference of scienter is rebutted).

28  *camera* cannot be used to establish reliability. *See* Mot. at 9, n.2 (citing authorities).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Plaintiff also does not dispute the fact that Messrs. Vasudevan and Singh sold twice as

2    many shares before the Class Period than during, which also negates an inference of scienter. *See*

3    Mot. at 24 (citing authorities). The fact that certain shares were sold pursuant to trading plans

4    adopted or amended during the Class Period does not alter this conclusion—Individual

5    Defendants made changes to the plans but this ***still*** resulted in them retaining the vast majority of

6    their shares.  This negates scienter. *See In re NVIDIA Corp. Sec. Litig.*, 2010 WL 4117561, at *11

7    (N.D. Cal. Oct. 19, 2010) (finding no inference of scienter when defendant retained a majority of

8    shares even if a trading plan was amended).  Plaintiff's defense of its inapposite "trading model"

9    fails as it does not dispute that: 1) it has ***never been adopted by any court*** to analyze scienter; 2) it

10    was not developed for that purpose; and 3) it is "rigged" to always generate an inference of

11    abnormal "profits." Opp. at 24, n.28; Mot. at 24-25.  Moreover, neither Defendants nor the Court

12    can replicate the results of the model without further information regarding its calculations and

13    methodology—a fact that Plaintiff does not dispute—which violates the Reform Act's

14    requirement that "all facts" supporting scienter must be pled in "great detail" to survive dismissal.

15    *In re Invensense, Inc. Sec. Litig.*, 2016 WL 1182063, at *5 (N.D. Cal. Mar. 28, 2016).

16    **V.    THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND**

17    The SAC should be dismissed without leave to amend.  Plaintiff has investigated this case

18    for more than a year; purportedly spoken to multiple ex-Nimble employees; reviewed documents

19    and publicly available information; and retained an expert. SAC at 1. There is no basis to believe

20    Plaintiff can plead additional facts to make its complaint viable, nor does it identify any such

21    facts.  Consequently, dismissal without leave to amend is warranted.

22    **VI.    CONCLUSION**

23    For all of the foregoing reasons, Defendants' motion to dismiss should be granted without

24    leave to amend.

25    Dated:   April 7, 2017                 FENWICK & WEST LLP

26
                                           By: *s/ Felix S. Lee*
27                                              Felix S. Lee

28                                              Attorneys for Defendants