UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE NIMBLE STORAGE, INC. SECURITIES LITIGATION** | CASE NO. 15-cv-05803-YGR<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 123 |

Plaintiff Arkansas Teacher Retirement System, as lead plaintiff, brings this consolidated second amended complaint against defendants Nimble Storage, Inc. ("Nimble"), Suresh Vasudevan, Anup Singh, Varun Mehta, and Dan Leary for alleged violations of federal securities laws. (Dkt. No. 121, "SAC.") Specifically, plaintiff claims that all defendants violated section 10(b) of the Exchange Act and Rule 10-b5 promulgated thereunder for allegedly making fraudulent statements regarding Nimble's prospects and financial condition between November 24, 2014 and November 19, 2015 (the "Class Period"). Additionally, plaintiff brings claims against defendants Vasudevan and Singh under section 20 of the Exchange Act.

The Court previously dismissed plaintiff's complaint, which focused on its allegations that defendants misled the public by failing to disclose Nimble's: (i) limiting its investments in Sales and Marketing ("S/M"); (ii) diversion of investments from its commercial segment to its enterprise segment; and (iii) failure to penetrate clients for its enterprise segment in a meaningful fashion.[1] Plaintiff's SAC now focuses on three other theories, namely that defendants misled the public by: one, failing to inform investors that Nimble's commercial segment was weakening throughout the Class Period; two, suggesting that Nimble's enterprise segment was growing while simultaneously misclassifying commercial clients as enterprise clients; and three, informing the public that

---

[1] The Court adopts the background section and discussion of general legal standards in its previous order granting defendants' prior motion to dismiss, and includes additional facts and allegations as necessary herein. (*See* Dkt. No. 113.)

1  Nimble remained on-track to "breakeven" while knowing that its commercial and enterprise segments were struggling.

Now before the Court is defendants' motion to dismiss the SAC. Having carefully reviewed the pleadings, the papers and exhibits submitted on this motion, and oral arguments heard on April 18, 2017, and for the reasons set forth more fully below, the Court **GRANTS** defendants motion as follows: The Court **DISMISSES WITH PREJUDICE** plaintiff's claims relating to statements regarding the commercial segment prior to August 25, 2015. The Court **DISMISSES WITHOUT PREJUDICE** plaintiff's remaining claims, granting leave to amend as outlined herein.[2]

## I. DISCUSSION

### A. Section 10(b) and Rule 10b-5 Claim

Defendants raise the following grounds upon which they argue plaintiff's claims should be dismissed: (i) plaintiff has failed to plead with particularity any false or misleading statements; (ii) certain statements are forward-looking and protected by the Private Securities Litigation Reform Act's ("PSLRAs") safe harbor; and (iii) plaintiff has failed to plead a strong inference of scienter. Because, as discussed below, the Court finds that plaintiff has not adequately pled any false or misleading statements or omissions, the Court does not address defendants' alternative bases for dismissal.

Generally, plaintiff has alleged three categories of false or misleading statements: first, the failure to disclose that the commercial segment was weakening throughout the Class Period;

---

[2] In connection with their motion to dismiss, defendants submitted a request for judicial notice ("RJN") for the following documents (Dkt. No. 125): (i) Exhibit A, excerpts of Nimble's Form 8-Ks filed with the Securities and Exchange Commission ("SEC"), dated November 25, 2014, February 26, 2015, May 26, 2015, August 25, 2015, and November 19, 2015; (ii) Exhibit B, analyst report by Maxim Group, dated November 20, 2014; (iii) Exhibit C, excerpts of Nimble's Form 10-K filed with the SEC, for period ending January 31, 2015; (iv) Exhibit D, excerpts of Nimble's earnings calls, dated November 25, 2014, February 26, 2015, May 26, 2015, and August 25, 2015; (v) Exhibit E, excerpts of Nimble's Form 10-Qs filed with the SEC, for the quarters ended July 31, 2014, April 30, 2015, and July 31, 2015; (vi) Exhibit F, Daniel Leary Forms 4s between March 11, 2014 and October 21, 2014; (vii) Exhibit G, Varun Mehta Forms 4s between March 11, 2014 and September 11, 2015; (viii) Exhibit H, Anup V. Singh Forms 4s between February 28, 2014 and December 1, 2015; and (ix) Exhibit I, Suresh Vasudevan Forms 4s between March 11, 2014 and December 11, 2015. Plaintiff does not oppose defendants' RJN. The Court previously took judicial notice of these same documents in its order granting defendants' prior motion to dismiss. (Dkt. No. 113 at 1–2 n.1.) For the same reasons stated therein, the Court **GRANTS** defendants' RJN.

2

second, misleading the public about growth in the enterprise segment, which was based on fraudulent reclassifications of commercial clients as enterprise clients; and third, expressing sentiments that Nimble was "on track" to breakeven because it led investors to believe defendants' statements regarding growth in the commercial and enterprise segments.

### *1. Statements Regarding the Commercial Segment*

By way of background, plaintiff previously articulated that defendants failed to disclose sufficiently the extent to which they were diverting S/M resources from commercial to enterprise, which ultimately resulted in weakness in the commercial segment. The Court previously rejected the same, explaining that defendants had disclosed the shift in investment and plaintiff had failed to identify any duty to disclose the exact extent to which defendants were shifting S/M resources. (Dkt. No. 113 at 11–13.) Plaintiff now alleges that certain statements relating to the commercial segment were misleading because at the times such statements were made, the commercial segment was already showing significant weakness. (*See, e.g.*, SAC ¶ 215 ("So we feel very good about both the pace of new customer acquisition in the mid-sized enterprise segment as well as the fact that we are growing our base in large enterprises."); ¶ 270 ("And we've been able to sustain our growth ramp based on our customer acquisition machine."); ¶ 279 ("We are systematically expanding our customer base across the mid-sized enterprise, large enterprise and cloud service provider segments of the market."); *see also id.* ¶¶ 215, 226, 236, 268, 270, 279, 290, 293.)

Defendants argue that plaintiff's allegations with regard to the commercial segment should be dismissed because plaintiff lacks particularized facts supporting claims that the commercial segment was weak throughout the Class Period and, given other allegations and uncontested facts in defendants' SEC filings, such claims are illogical. The Court agrees.

Plaintiff simply cannot reconcile its allegations with the undisputed fact that Nimble consistently exceeded its revenue projections for each quarter during the Class Period, except for its last projection. (SAC ¶ 119.) Specifically: At the start of the Class Period, Nimble announced that its revenue for Q3 2015 was $59.1 million and projected that its Q4 2015 revenue would be between $65 and $67 million. Nimble reported $68.3 million in revenue for that quarter and projected revenue of $68 to $70 million for Q1 2016, during which Nimble earned $71.3 million

3

in revenue. For Q2 2016, Nimble projected revenues of $77 to $79 million and ultimately reported $80.1 million in revenue. For the last quarter of the Class Period, Nimble projected revenue of $86 to $88 million, but reported only $80.7 million. (*Id.* ¶ 18.)

It is illogical for plaintiff to allege that Nimble was failing to penetrate enterprise at the same time that its commercial segment was weakening, while also reporting record revenues each quarter. This is particularly so where plaintiff has alleged that deals in the commercial segment were generally completed within ninety days. (*Id.* ¶¶ 52, 177.) Therefore, any growing weaknesses would have become manifest throughout the Class Period rather than merely during the last quarter of the Class Period. *See In re JDS Uniphase Corp. Sec. Litig.*, No. 02-CV-1486-CW, 2003 WL 26615705, at *4 (N.D. Cal. Nov. 3, 2003) (dismissing claims on grounds they were "simply illogical," as plaintiff failed to provide a "reasonable explanation" for how defendant could be experiencing uncontroverted growth without experiencing strong demand).[3]

As defendants acknowledge, at some point during the final quarter of the Class Period, Nimble experienced a decline in both its commercial and enterprise segments, resulting in the missed revenue guidance. (*See* SAC ¶ 300 ("We believe that this decreased investment led to slower growth than we would have seen, had we maintained our previous pace of investment."); ¶ 308 ("It was really pressure that we saw throughout Q3 . . . for us this quarter, throughout, we noticed that there was more competitive intensity, and certainly that carried on through month three.").) The Court can foresee a claim surviving for that short window during Q3 2015 prior to

---

[3] Plaintiff argues that Confidential Witnesses ("CW") 1, 2, 5, and 9 support their allegations regarding the weakening of the commercial segment throughout the Class Period. Not so. CWs 1 and 2 merely state that Nimble began shifting resources away from its commercial segment leading ultimately to lack of growth in the same, but neither provides a timeframe during which commercial started to weaken. While both CWs 5 and 9 both stated that the commercial segment began "drying up" during the Class Period, CW 5 was a senior systems engineer primarily for the mid-Atlantic region whereas CW 9 was a systems engineer for an unspecified region. There is no indication that either had responsibility over, let alone knowledge of, the status of commercial sales for the entire company. In any event, plaintiff's allegations relating to the weakening of the commercial segment are implausible given the uncontested growth in revenue throughout the Class Period.

4

the corrective disclosures on November 19, 2015, to the extent that plaintiff can adequately allege any actionable statements. Plaintiff, however, has failed to do so in the SAC.[4]

Accordingly, the Court **DISMISSES WITH PREJUDICE** plaintiff's claims relating to defendants' statements about Nimble's commercial segment, except as to statements made within the last quarter of the Class Period. Claims relating to those statements are **DISMISSED WITHOUT PREJUDICE** and with leave to amend.

### *2. Statements Regarding the Enterprise Segment*

The heart of plaintiff's theory with regard to statements about Nimble's enterprise segment is thus: defendants knew throughout the Class Period that fibre channel was not effectively penetrating the enterprise segment, but concealed this fact by touting the growth of its enterprise customer base while at the same time relabeling commercial accounts as enterprise accounts. (*See id.* ¶ 12; *see also id.* ¶¶ 215, 222, 224, 226, 232, 234, 238, 240, 242, 250, 252, 254, 259, 261, 263, 272, 275, 277, 279, 281, 290, 293.) Specifically, plaintiff now alleges that these relabeled customers were not true enterprise customers because they did not "meet the revenue requirements to be members of the Global 5000 enterprise list." (*Id.*)[5] According to plaintiff, defendants' use of "enterprise" both externally and internally referred exclusively to clients listed in the Global 5000, i.e., the largest 5,000 companies in the world by revenue. In support of such allegations, plaintiff cites to statements from several confidential witnesses: For instance, CW 3 attests that Nimble began relabeling commercial accounts as enterprise accounts beginning in December 2014 and stated that the "reason behind the re-labeling of the accounts was ultimately to make enterprise sales look like they were doing better than they actually were." (*Id.* at ¶ 180; *see also*

---

[4] Notably, the only misleading statements made during this quarter were made either at the beginning of the quarter on August 25, 2015 in connection with Nimble's Q2 2016 disclosures (SAC ¶¶ 275, 277, 279, 281, 283, and 286) or on September 22, 2015 in connection with an interview Mehta and Singh gave to Wells Fargo (*id.* ¶¶ 290, 293). To state a claim for such statements, plaintiff must, at the least, allege that such statements were made at a time when defendants knew that their revenue projections would not be met because the commercial segment was in decline.

[5] In the Court's prior order, the Court found that plaintiff had not adequately alleged that any of the reclassifications were improper. (Dkt. No. 113 at 16–17.)

*id.* ¶¶ 181–187.) Additionally, CWs 8 and 9 identified seven clients that were reclassified as enterprise, but did not appear on the list of Global 5000 companies during the Class Period.

Defendants do not dispute that such reclassifications occurred. Rather, defendants' argue that plaintiffs have not alleged particularized facts demonstrating that the internal reclassifications were disclosed to the investing public and that numbers disclosed to the public were false.[6]

The Court agrees. Importantly, throughout the Class Period, defendants provided to the public updates on the growth of its Global 5000 customer base: At the start of the Class Period, Nimble announced that it had 260 Global 5000 customers, fifteen of which were also within the Global 100. (SAC ¶ 188 n.15.) In Q4 2015, Nimble announced that it added forty-one new Global 5000 customers to the installed base, including dozens of Global 500 companies. (*Id.*) And finally, in Q3 2016, Nimble announced that it had over 400 global enterprises, including seventy-eight of the Global 500. (*Id.*) Thus, defendants informed the public that its Global 5000 customer base had grown by approximately 140 clients throughout the Class Period.

Plaintiff has not alleged that such numbers that were disclosed to the public were false. In its opposition, plaintiff argues that it does so in paragraph 252, which quotes a statement plaintiff alleges is misleading. Though the statement cited in paragraph 252 does include a reference to Nimble adding "41 new G5000 customers to [its] installed base during the quarter," plaintiff does not allege that it was misleading because Nimble did not actually add forty-one new Global 5000 customers. Rather, plaintiff alleges:

> Vasudevan's and Singh's statement that Nimble "added new G5000 enterprises . . . at a record pace" was false and misleading because Nimble was struggling to gain traction with Global 5000 enterprise customers. Fibre Channel was not sufficient for Nimble to meaningfully penetrate or grow the enterprise market. Nimble was still lacking an all-flash array, and its products aimed at enterprise customers lacked important features and functionalities including deduplication and CIFS/NFS, among others, that enterprise clients required. Moreover, Vasudevan and Singh failed to disclose that Nimble was misleading the market as

---

[6] Plaintiff argues that this Court had already decided in its previous order that the reclassifications need not have been disclosed for such statements to be actionable. Plaintiff misreads the Court's order in this regard. Rather, the Court found that, even if the fact that clients were being reclassified was not publicly disclosed, such statements regarding the enterprise segment could still be actionable because the "facts underlying the disclosed numbers included the fraudulent reclassifications." (Dkt. No. 113 at 16 n.15.)

6

1  to enterprise growth by improperly relabeling commercial customers as enterprise customers.

(*Id.* ¶ 253.) Such is not an allegation that the "forty-one" number itself was misleading because it included customers that were fraudulently relabeled as enterprise customers.[7]

In any event, plaintiff has not alleged particularized facts supporting plaintiff's argument that any commercial clients that were allegedly fraudulently relabeled as enterprise clients were incorporated into these publicly disclosed numbers. While plaintiff's new focus on the Global 5000 companies and new allegations that non-Global 5000 clients were reclassified from commercial to enterprise *may* support an inference that defendants mislabeled certain clients, plaintiff's complaint lacks allegations connecting such reclassifications to any numbers actually disclosed by defendants. Absent such allegations and allegations that the disclosed numbers were false, plaintiff's claims with regard to statements about Nimble's enterprise segment are not actionable. Based on such numbers, the market and investors can assess for themselves defendants' statements regarding Nimble's penetration of the enterprise segment. *See In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1481 (N.D. Cal. 1992) ("[Sales and profit data], when accurately reported, [are] rarely subject to misinterpretation, even if the disclosure is accompanied by generally optimistic statements about the future by corporate officers. Professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives, who have a personal stake in the future success of the company.") The Court finds, however, that plaintiff may yet be able to plead adequate facts to satisfy their pleading burden with regard to such claims. *See In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1052 (N.D. Cal. 2007) (granting leave to amend despite previous attempts to cure deficiencies, noting that allowing leave to amend is "especially important in the context of the PSLRA").

Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** plaintiff's claims with respect to

---

[7] Plaintiff's argument to the contrary both in opposition and at oral arguments is belied further by other allegations in the SAC. In the SAC, plaintiff ***bolded and italicized*** statements it alleges are actionable under the securities laws. In paragraph 254 of the SAC, plaintiff quotes Singh's statements from a March 4, 2015 conference. Plaintiff bolded and italicized several excerpts of Singh's statements, but specifically did not bold and italicize Singh's statement that Nimble "ended the year with about 300 of the largest enterprises around." (SAC ¶ 254.) Such number is consistent with defendants' statements in paragraph 252 that Nimble added forty-one new Global 5000 customers.

1  defendants' statements about its enterprise segment.  The Court grants plaintiff leave to amend but

2  only to the extent that plaintiff can adequately allege that the reclassifications were fraudulent and

3  such fraudulent reclassifications were disclosed to the public.[8]

**B.    Section 20(a) Claim**

Defendants do not contest that Vasudevan and Singh are "controlling" individuals under the statute.  Thus, section 20(a) claims against the same are dependent on whether plaintiff's section 10(b) claims survive.  The Court has found that plaintiff has failed to allege adequately any predicate violations of section 10(b).  Accordingly, the Court **GRANTS** defendants' motion to dismiss plaintiff's section 20(a) claim with leave to amend.

**II.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** defendants' motion to dismiss as follows: The Court **DISMISSES WITH PREJUDICE** plaintiff's claims relating to statements regarding the commercial segment prior to August 25, 2015.  The Court **DISMISSES WITHOUT PREJUDICE** plaintiff's remaining claims, granting leave to amend as outlined herein.  By **May 19, 2017**, plaintiff must file a notice of intent advising the Court and parties whether it intends to rest on the SAC or attempt a third amended complaint.  If the latter, the amended pleading shall be filed no later than **June 12, 2017**.  Defendants shall respond within twenty-eight (28) days of filing.

This Order terminates Docket Number 123.

**IT IS SO ORDERED.**

Dated: May 10, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[8] With regard to the third category of allegedly misleading statements, alleged optimistic statements indicating that a company is "on track" to meet a certain goal are, without more, inactionable puffery.  *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1168–69 (C.D. Cal. 2007) (statement that a company was "on track to deliver improved financial performance in the fall" is inactionable as "mere corporate puffery"); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 880 (N.D. Cal. 2004) (same).  Thus, whether such statements are actionable will rise and fall with the first two categories of statements.  (*See* SAC ¶¶ 219, 244, 246, 248, 257, 266, 283, 286, 290, 293.)  Accordingly, given the Court's analysis above, the Court finds that such statements constitute inactionable puffery and **DISMISSES** the same with leave to amend.